**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ED BUTCHER; LONNY BERGSTROM,
*Plaintiffs-Appellants*,

v.

AUSTIN KNUDSEN,* in his official
capacity as Attorney General of
Montana; JEFFREY MANGAN, in his
official capacity as Montana
Commissioner of Political Practices,
*Defendants-Appellees*.

No. 21-35010

D.C. No.
6:20-cv-00057-DLC

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted October 8, 2021
Portland, Oregon

Filed July 6, 2022

Before:  William A. Fletcher, Sandra S. Ikuta, and
Daniel A. Bress, Circuit Judges.

---

*Austin Knudsen is substituted for his predecessor, Timothy Fox, as Attorney General of Montana. Fed. R. App. P. 43(c)(2).

Opinion by Judge Bress;
Dissent by Judge W. Fletcher

---

**SUMMARY**[**]

**Civil Rights**

The panel reversed the district court's summary judgment for Montana state defendants and held that Montana Administrative Rule 44.11603, under which plaintiffs were required by the Montana Commission of Political Practices to register as a political action committee, is unconstitutionally vague as applied to plaintiffs.

Plaintiffs, Ed Butcher, a former Montana State Senator, and Lonny Bergstrom, operate a website that tracks the voting records of Republican state legislators in Montana. Based on the travel expenses plaintiffs incurred in giving presentations about the website to Republican groups, Montana's Commissioner of Political Practices determined that Butcher and Bergstrom had formed a "political committee" under Montana law, subject to numerous reporting obligations.

Montana law broadly defines a "political committee," in relevant part, as "a combination of two or more individuals . . . who receives a contribution or makes an expenditure" to "support or oppose" a candidate or a ballot issue. An expenditure of $250 or less does not create a political committee. Nor will expenditures that qualify as "de

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

minimis acts," which do not count towards the $250 threshold. Montana Administrative Rule 44.11.603 sets forth guidance as to what constitutes a de minimis act, including exempt volunteer services or efforts.

The panel held that Montana's administrative scheme did not give plaintiffs fair notice that when they traveled around Big Sky Country without pay to give presentations, their purchases of fast food, fuel, and lodging at a roadside motel were not considered de minimis expenses associated with volunteer services. Although plaintiffs acknowledged they occasionally advocated for particular candidates, from the standpoint of a reasonable person, that conduct was fully consistent with both the term "volunteer" and Montana's de minimis acts exemption. Nothing in Montana law suggests that only those persons providing volunteer services or efforts within an organizational structure of a group are exempted from a political committee designation.

Dissenting, Judge Fletcher stated that plaintiffs were not political naifs. They were sophisticated political actors. They acted in a concerted and sustained manner to bring accurate and relevant political information to interested political groups. In short, they engaged in valuable and protected First Amendment activity. But they did not do so as "volunteers" within the meaning of Montana election law. Rather, they did so as a "political committee."

**COUNSEL**

Matthew G. Monforton (argued), Monforton Law Offices PLLC, Bozeman, Montana, for Plaintiffs-Appellants.

Jeremiah Langston (argued), Assistant Attorney General; J. Stuart Segrest, Chief, Civil Bureau; Austin Knudsen, Attorney General; Office of the Attorney General, Helena, Montana; for Defendants-Appellees.

**OPINION**

BRESS, Circuit Judge:

Two retirees, Ed Butcher and Lonny Bergstrom, operate a website that tracks the voting records of Republican state legislators in Montana. Several local Republican groups in Montana took an interest in the website and invited Butcher and Bergstrom to speak on their findings. Based on the travel expenses they incurred in giving these presentations—such as for gas, meals at McDonald's, and a night at a La Quinta Inn—Montana's Commissioner of Political Practices determined that Butcher and Bergstrom had formed a "political committee" under Montana law. Because Butcher and Bergstrom had neither registered their alleged political committee with the state nor complied with numerous reporting obligations, the Commissioner concluded they were subject to a civil fine and civil prosecution. Butcher and Bergstrom argue, however, that Montana law is impermissibly vague because they lacked fair notice that their conduct would not be treated as "de minimis," and thus exempt, under Montana Administrative Rule 44.11.603.

We hold that Rule 44.11.603 is unconstitutionally vague as applied to Butcher and Bergstrom. Butcher and Bergstrom were engaged in core political speech that lies at the heart of the First Amendment. The protections against impermissibly vague laws, rooted here in the Due Process Clause of the Fourteenth Amendment, are at their maximum in this most sensitive area, in which insufficiently defined legal regimes can discourage valuable speech and invite unbalanced government regulation of less popular views. In this case, Montana law did not give Butcher and Bergstrom fair notice that the travel expenses associated with their hobbyist speaking engagements transformed them into a two-person political committee subject to demanding disclosure and reporting requirements. We therefore reverse the district court's judgment to the contrary.

## I

### A

Ed Butcher is a 78-year-old retired Republican state senator from Montana. His late son Trevis created a website called Legistats. Legistats analyzes how individual Republican state legislators in Montana vote on what Legistats terms "partisan bills," that is, bills in which the Republican and Democratic state caucuses usually vote in opposition to each other. Legistats then ranks the lawmakers according to how often they vote with the rest of the Republican Party. Each legislator is given a grade, ranging from "A," which means "exception[al] party loyalty," to "F," meaning "basically a Republican that Democrats can consistently count on to swing partisan votes." After Trevis passed away in 2017, Butcher took over operation of the website.

Local Republican groups around Montana were intrigued and invited Butcher to give presentations on Legistats. Butcher's friend Lonny Bergstrom, who is also retired, accompanied him to these presentations. Bergstrom helped by preparing the PowerPoint presentations and projecting the slides while Butcher spoke. Butcher primarily aimed to be "informative and educational" in his remarks, but sometimes he would make statements supporting or criticizing candidates for office.

From January 2019 to May 2020, Butcher and Bergstrom gave eight presentations to Republican groups in various towns across Montana. In doing so, they incurred ordinary travel expenses. They spent between $100 and $400 on gas each time. For food, they stopped at McDonald's, purchased snacks at a gas station, or brought sack lunches. They stayed overnight once, at the La Quinta Inn in Glendive, Montana, a small town near the North Dakota border. The room rate was approximately $75. Butcher and Bergstrom never received compensation for the presentations, nor were they reimbursed for their expenses.

## B

Since the 1970s, Montana has required political committees to register with the state, report election-related expenditures, and comply with additional requirements. *See* Mont. Code Ann. §§ 13-37-201 *et seq.*; *Canyon Ferry Baptist Church v. Unsworth*, 556 F.3d 1021, 1026 (9th Cir. 2009). Montana law broadly defines a "political committee," in relevant part, as "a combination of two or more individuals . . . who receives a contribution or makes an expenditure" to "support or oppose" a candidate or a ballot issue. Mont. Code Ann. § 13-1-101(32)(a).

As pertinent here, whether a group of two or more persons is a political committee turns on Montana's definition of a qualifying expenditure. An "expenditure" is "a purchase, payment, distribution, loan, advance, promise, pledge, or gift of money or anything of value . . . made by a candidate or political committee to support or oppose a candidate or a ballot issue." *Id.* § 13-1-101(19)(a)(i).

An expenditure of $250 or less will not create a political committee. *Id.* § 13-1-101(32)(d). Nor will expenditures that qualify as "de minimis act[s]," which do not count towards the $250 threshold. *See id.* § 13-1-101(11); Mont. Admin. R. 44.11.202(3)(c) ("A political committee is not formed by . . . a de minimis activity."); *Vargas v. Hoffman*, Mont. Comm'r Pol. Prac. Advisory Op. 4–5 (Oct. 20, 2017). A "de minimis act" means "an action, contribution, or expenditure that is so small that it does not trigger registration, reporting, disclaimer, or disclosure obligations . . . or warrant enforcement as a campaign practices violation." Mont. Code Ann. § 13-1-101(11). Thus, "de minimis acts" do not create political committees or require reporting. *See id*.

The statute delegates to Montana's Commissioner of Political Practices the authority to further define "de minimis acts." *Id*. § 13-37-114. In Montana Administrative Rule 44.11.603, the Commissioner has attempted to provide guidance on this point. In subsection (1), the Commissioner has identified five factors that he "may consider" in determining whether an expenditure is de minimis:

> The commissioner may consider the following factors in determining whether specific acts, contributions, or expenditures are de minimis and therefore do not trigger registration, reporting, attribution, or

disclosure requirements, or warrant enforcement as a campaign practices violation:

(a) whether the act, contribution, or expenditure has an ascertainable fair market value, and if so the amount of that value;

(b) in the case of an act that results in the provision of services, whether the act results in either a detriment to the provider of the services, such as an out-of-pocket expense or the preclusion of other activities;

(c) whether the act, contribution, or expenditure at issue is a single, one-time event or occurrence or multiple events or occurrences;

(d) the extent to which a particular campaign practices violation deprives the public of disclosure;

(e) other factors and circumstances similarly showing limited value or minimal harm.

Mont. Admin. R. 44.11.603(1).

Then, in subsection (2), the Commissioner's rule provides seven examples of expenditures "that may, depending on the circumstances, be considered de minimis":

Acts, contributions, or expenditures that may, depending on the circumstances, be considered de minimis include:

(a) the creation of electronic or written communications or digital photos or video, on a voluntary (unpaid) basis by an individual, including the creation and outgoing content development and delivery of social media on the internet or by telephone;

(b) the provision by an individual or political committee of personal property, food, or services with a cumulative fair market value of less than $35 in the aggregate for any single election;

(c) the location value of the display of lawn or yard signs on real property, but only if the property owner does not normally and does not in fact charge a fee for [the] display of signs;

(d) any value attributable to the display of campaign bumper stickers or signs on a vehicle, but only if the vehicle owner does not normally and does not in fact charge a fee for [the] display of bumper stickers or signs;

(e) typographical errors or incomplete or erroneous information on a campaign finance report that is determined not to be misleading or that does not substantially affect disclosure;

(f) any failure to comply with the attribution requirements of 13-35-225, MCA, that is determined to nevertheless provide sufficient

disclosure regarding who made or financed the communication;

(g) expenses associated with volunteer services or efforts, including the cost of gas, parking, and meals.

*Id.* 44.11.603(2). We will return to Rule 44.11.603 in greater detail below.

Montana political committees are subject to elaborate registration, disclosure, and reporting obligations. *See* Mont. Code Ann. §§ 13-37-201 *et seq.* Within five days of making a qualifying expenditure that forms a political committee, the committee must register with the state. *Id.* § 13-37-201(2)(b). Then, political committees must generally file reports on "the 30th day of March, April, May, June, August, September, October, and November in the year of an election in which the political committee . . . participates." *Id.* § 13-37-226(2)(b). Other reports must be filed quarterly, *id.* §§ 13-37-226(2)(a), (e), or, in some instances, within two days of receiving a contribution or making an expenditure above a $500 threshold, *id.* §§ 13-37-226(2)(c)–(d). These required reports must disclose detailed information about the political committee's financials. *Id.* § 13-37-229.

In addition, each political committee must designate a campaign depository and make most expenditures "by check drawn on the designated depository." Mont. Admin. R. 44.11.409(3); Mont. Code Ann. § 13-37-205(1). The committee's financial accounts "may be inspected under reasonable circumstances . . . by the campaign treasurer of any opposing candidate or political committee in the same electoral district." *Id.* § 13-37-209. Within five business

days of receiving any contribution, the treasurer must transfer the funds into the depository and prepare a written statement describing the deposit. *Id.* § 13-37-207.

Montana law allows any person who believes a campaign finance violation has occurred to file a written complaint with the Commissioner. Mont. Admin. R. 44.11.106(1). "[U]pon receipt of a complaint, the commissioner shall investigate the alleged violation" and "prepare a written summary of facts and statement of findings." *Id*. 44.11.106(3).

If the Commissioner finds facts supporting a violation, he "shall notify the county attorney of the county in which the alleged violation occurred." Mont. Code Ann. § 13-37-124(1). "If the county attorney fails to initiate the appropriate civil or criminal action within 30 days," the Commissioner may do so. *Id*. The Commissioner typically resolves cases through the payment of a negotiated fine. However, he may instead choose to file a complaint in court against the violator. *See id.* § 13-37-124(4).

C

On May 29, 2020, a Montana resident filed a citizen campaign finance complaint against Butcher and Bergstrom. According to the complainant, by giving the Legistats presentations Butcher and Bergstrom had "been traveling the state" and "spending time and money in a campaign effort to target certain Republican candidates in the upcoming Republican primary." The complaint alleged that Butcher and Bergstrom had formed a political committee yet had failed to register with the state and comply with related requirements.

Jeffrey Mangan, Montana's Commissioner of Political Practices, investigated the complaint. He issued a final decision on September 30, 2020, finding that Butcher and Bergstrom "became a political committee on or about June 7, 2019," when they gave the first known Legistats presentation in Stevensville, Montana. According to Mangan, "Mr. Butcher and Mr. Bergstrom represent a combination of two or more individuals that made an expenditure of more than $250.00 to support or oppose candidates for election," because their expenses for the Stevensville trip were estimated at $346.15, and "de minimis . . . theories are not applicable."

Mangan ordered Butcher and Bergstrom to register with the state and submit the required filings within two weeks. He further concluded that "a civil fine or civil prosecution" was justified. Mangan referred the matter to the county attorney "for his consideration as to prosecution."

While the administrative investigation was still ongoing, Butcher and Bergstrom filed this lawsuit against Mangan and Timothy Fox, the state Attorney General (Austin Knudsen has since replaced Fox). Butcher and Bergstrom raised several theories under 42 U.S.C. § 1983, including that Rule 44.11.603 is unconstitutionally vague. Butcher and Bergstrom alleged in their complaint that while they "intend to engage in similar presentations during the remainder of the 2020 election cycle and beyond," they "will not do so . . . while there remains a threat of additional exposure to civil penalties."

The district court granted summary judgment to the State. On appeal, in which our review is de novo, *see O'Doan v. Sanford*, 991 F.3d 1027, 1035 (9th Cir. 2021), Butcher and Bergstrom challenge only the district court's ruling on their vagueness theory. Specifically, Butcher and

Bergstrom argue that they lacked fair notice that their expenses would not be exempted as "de minimis" under Rule 44.11.603.

## II

### A

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Laws that are impermissibly vague offend due process because they contravene two bedrock constitutional norms. *Id.* The first is that "regulated parties should know what is required of them so they may act accordingly." *Id.* The second is that laws must provide proper "precision and guidance" to ensure that "those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)). When laws fail to "provide explicit standards for those who apply them," they "impermissibly delegate[] basic policy matters . . . for resolution on an ad hoc and subjective basis." *Grayned*, 408 U.S. at 108–09.

Vague laws thus stand in basic opposition to the rule of law. In evaluating whether a law is unconstitutionally vague, we ask whether it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox*, 567 U.S. at 254 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

For laws implicating First Amendment freedoms, the void-for-vagueness doctrine has special purchase. Although "perfect clarity is not required even when a law regulates

protected speech," "vagueness concerns are more acute when a law implicates First Amendment rights, and, therefore, vagueness scrutiny is more stringent." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) and *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

When a law implicating free speech is impermissibly vague, it risks repressing the very discourse that the First Amendment protects and encourages. *See Fox*, 567 U.S. at 253–54. As the Supreme Court has explained, when "a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned*, 408 U.S. at 109 (quotations and alterations omitted). A vague law governing speech also poses heightened risks of arbitrary enforcement, inviting disparate treatment of less popular speakers or viewpoints. *See NAACP v. Button*, 371 U.S. 415, 435 (1963) ("[A] vague and broad statute lends itself to selective enforcement against unpopular causes.").

These concerns are magnified even further when a law regulates political speech, which "occupies the highest rung of the hierarchy of First Amendment values." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). Free and robust discussion on political issues and elections is "integral to the operation of the system of government established by our Constitution." *McCutcheon v. FEC*, 572 U.S. 185, 203–04 (2014) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976)). We must therefore proceed with vigilance when evaluating

a vagueness challenge involving laws that regulate political speech—speech that is entitled to the "broadest protection." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (quoting *Buckley*, 424 U.S. at 14).

Consistent with these principles, courts have not hesitated to reject on vagueness grounds laws regulating speech protected by the First Amendment. *See, e.g.*, *Fox*, 567 U.S. at 258; *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048 (1991); *Hunt v. City of Los Angeles*, 638 F.3d 703, 712–13 (9th Cir. 2011); *Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137–38 (9th Cir. 2000); *Foti v. City of Menlo Park*, 146 F.3d 629, 638–39 (9th Cir. 1998). This includes vague laws that regulate political speech. *See, e.g.*, *Buckley*, 424 U.S. at 43–44; *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 843–44 (7th Cir. 2014); *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274, 284–85 (4th Cir. 2008).

Within this framework, we turn to Butcher and Bergstrom's as-applied challenge to Rule 44.11.603.[1]

B

We first address Montana's argument that our decision in *Canyon Ferry Baptist Church v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009), forecloses Butcher and Bergstrom's due process challenge. We conclude that Montana's reliance on *Canyon Ferry* is misplaced.

---

[1] We do not consider whether Montana's scheme is facially invalid, *i.e.*, unconstitutional in nearly all its applications. *See Johnson v. United States*, 576 U.S. 591, 602–03 (2015). We also do not consider whether Montana's political committee requirements, if applicable, would violate the First Amendment. *See Canyon Ferry*, 556 F.3d at 1030–34.

In *Canyon Ferry*, we considered the constitutionality of Montana's political committee registration and reporting scheme, and specifically an older version of Montana's definition of "expenditures." *See id.* at 1023–25. Montana law at that time had no exception for expenses under $250 or for de minimis activities, so that every "purchase, payment, distribution, loan, advance, promise, pledge, or gift of money or anything of value made for the purpose of influencing the results of an election" formed a committee and had to be disclosed. *Id.* at 1026–27 (quoting Mont. Code Ann. § 13-1-101(11)(a) (2008)).    Montana regulations further explained that this definition encompassed "in-kind expenditures," that is, "the furnishing of services, property, or rights without charge or at a charge which is less than fair market value to a person, candidate, or political committee." *Id.* at 1027 (quoting Mont. Admin. R. 44.10.323(2) (2008)).

In *Canyon Ferry*, the Commissioner found that the Canyon Ferry Baptist Church was a "political committee." He reached this conclusion because the Church had made three "expenditures" in the course of collecting signatures supporting "CI–96," a ballot initiative that would have amended the state constitution to define marriage as between a man and a woman. *Id.* at 1024–25. Specifically, (1) the Church allowed one of its members "to photocopy a CI–96 petition form on the Church's copy machine, with her own paper"; (2) it allowed that same member to "plac[e] the CI–96 petitions in the Church's foyer"; and (3) the Church's pastor had issued an "exhortation to sign the CI–96 petition during a regularly scheduled sermon." *Id.* at 1029.

As in this case, the Commissioner concluded that these "expenditures" created a political committee. *Id.* at 1025. Like Butcher and Bergstrom, the Church brought a § 1983 action claiming, among other things, that Montana's

definition of "expenditures" was unconstitutionally vague. *Id*.

We rejected the Church's facial challenge because "[o]n their face, the Montana regulations are precise enough" and "pose[] no vagueness problem in the 'vast majority of [their] intended applications.'" *Id*. at 1028 (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). But we agreed with the Church that the regulations were unconstitutionally vague as applied to the Church's second and third cited expenditures. We explained that "[t]he absence of a minimum value threshold substantially affects the analysis of the disclosure requirement's vagueness." *Id*. at 1029. And because the placement of the petition in the Church foyer and the pastor's endorsement "neither cause[d] an economic detriment to the Church nor carrie[d] an ascertainable market value," the Church lacked notice and "objective guidance as to whether it ha[d] provided a 'service.'" *Id*. at 1029–30.

By contrast, the law was sufficiently clear as applied to the photocopies because they caused the Church to incur detriment in the form of "wear and tear of its equipment," and would have cost the Church money "on the open market." *Id*. at 1030. Even so, we went on to hold, the Commissioner had nonetheless violated the First Amendment by imposing onerous disclosure requirements on the Church based only on this minimal activity. *Id*. at 1030–34.

After *Canyon Ferry*, Montana amended the definition of "expenditure" by adding the $250 threshold and carving out "de minimis" activities. *See* Mont. Code Ann. §§ 13-1-101(11), (32)(d). Montana now suggests these changes effectively insulate the new law from a vagueness challenge altogether. It argues that "[t]his Court, in *Canyon Ferry*,

already determined that Montana's disclosure requirements are facially valid," and that the post-*Canyon Ferry* amendments only "improved the clarity of Montana's regulations."

Montana reads *Canyon Ferry* to resolve a constitutional challenge that the case did not and could not address. Even if Montana's addition of a "de minimis act" exemption and a $250 threshold were intended as responsive to *Canyon Ferry*'s concerns, *Canyon Ferry* had no opportunity to consider the constitutionality of future amendments that the state might make. And as we explain below, Montana made various other changes to its laws that have no apparent connection to what we said in *Canyon Ferry*.

Simply because Montana added more to its law after *Canyon Ferry* does not mean *Canyon Ferry* now shields the new law from a vagueness challenge, much less an as-applied one. Montana's reliance on *Canyon Ferry* is also at odds with the fact that the case did, after all, largely vindicate the plaintiff's constitutional challenge. Whether Montana's new law survives constitutional scrutiny thus cannot be resolved by a cursory comparison to *Canyon Ferry*. Instead, we must consider Montana's new rules in the context of its scheme as a whole, as applied to the plaintiffs here.

C

Did Butcher and Bergstrom have "fair notice" that when they traveled around Big Sky Country without pay to give presentations, their purchases of fast food, fuel, and lodging at a roadside motel made them a "political committee" under Montana law? *See Fox*, 567 U.S. at 253. Our examination of Montana's scheme convinces us that the answer must be no.

1

To see why, it is important to begin with the overall structure of Montana law, which broadly defines what counts as a "political committee" and then allows the Commissioner to exclude persons from that all-embracing definition based on various factors. A "political committee" is "a combination of two or more individuals . . . who receives a contribution or makes an expenditure" for an election-related purpose. Mont. Code Ann. § 13-1-101(32)(a). And with limited carve-outs that do not apply here, *id.* § 13-1-101(19)(b), "expenditure" is defined expansively as "anything of value," *id.* § 13-1-101(19)(a).

Montana law now imposes a $250 expenditure threshold and excludes expenditures that are "de minimis act[s]." *Id.* §§ 13-1-101(11), (32)(d). But absent the "de minimis acts" exemption, Montana law would treat as "political committees" a vast range of persons engaged in nearly every form of election-related activity. Political persuasion and electioneering are often group endeavors. Get just two people together for that purpose, have them spend $250 over a given election cycle, *see Essman v. Billings Chamber of Commerce*, Mont. Comm'r Pol. Prac. Advisory Op. 6–8 (Oct. 31, 2018), and they might now be a "political committee," subject to rigorous reporting requirements that are sure to discourage political speech, especially by those less sophisticated in the intricacies of campaign finance law. *See FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 254–55 (1986). The First Amendment implications of such a system should be obvious.

That underscores the importance of Montana's "de minimis acts" exemption. But even a cursory glance at how the Commissioner has interpreted that exemption demonstrates just how widely Montana's "political

committee" definition would otherwise sweep. The examples the Commissioner has given of potentially exempt de minimis acts include: the unpaid creation of material for social media, "the location value of the display of lawn or yard signs on real property," and "any value attributable to the display of campaign bumper stickers or signs on a vehicle." Mont. Admin. R. 44.11.603(2)(a), (c), (d). These are some of the most basic forms of American political activity. But the implication of these exemptions is that the "expenditures" associated with, for instance, the location value of front yard grass or the monthly bill for Wi-Fi, could otherwise form a "political committee" if two or more persons are involved (which they nearly always will be). Once again, treating common "expenditures" associated with common political activity as producing a "political committee," and then regulating them as such, would have profound First Amendment implications.

2

It is against this backdrop that we turn to Rule 44.11.603(2)(g), the "de minimis" example that Butcher and Bergstrom claim should have applied to them, and whose non-application, they assert, was not reasonably foreseeable. In subsection 2(g), the Commissioner identified as among the "[a]cts, contributions, or expenditures that may, depending on the circumstances, be considered de minimis . . . (g) expenses associated with volunteer services or efforts, including the cost of gas, parking, and meals." Butcher and Bergstrom claim they provided "volunteer services or efforts" because they "gratuitously and freely confer[red] the benefits of their time and efforts upon the GOP organizations that invite[d] them to give Legistats presentations." And they point out that gas, which is specifically listed as an exempted volunteer expense, is what

they mostly spent their money on.  In their view, they had no reasonable way of knowing that their expenses would not be exempt from Montana's registration and reporting requirements.[2]

In evaluating Butcher and Bergstrom's argument, we first consider whether the "common understanding" of the phrase "volunteer services or efforts" "provides a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited.'"  *Gospel Missions of America v. City of Los Angeles*, 419 F.3d 1042, 1047 (9th Cir. 2005) (quoting *Grayned*, 408 U.S. at 108).  In determining this "common understanding," we may consider dictionary definitions.  *See, e.g.*, *id.*; *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013).

Here, and although we do not suggest that "volunteer" is an infinitely elastic term, Butcher and Bergstrom quite reasonably maintain that they provided "volunteer services or efforts."  Indeed, any suggestion that they were *not* acting in that capacity runs counter to the common understanding of those terms.  "Volunteer" means "of or pertaining to" "one who voluntarily offers his services in any capacity," where "voluntarily" means "freely" or "willingly." *Volunteer*, Oxford English Dictionary (2d ed. 1989);

---

[2] Contrary to Montana's position on appeal, Butcher and Bergstrom did not waive the argument that they provided volunteer services to the local GOP organizations that invited them to speak.  In their motion for summary judgment, Butcher and Bergstrom specifically argued that they "d[id] not receive compensation from the Republican organizations that invite them to make these presentations."  Then, after extensive discussion of the "volunteer" exemption, they argued that they "could reasonably assume that their travel expenses were de minimis under Rule 44.11.603(2)(g)."  They thus preserved the arguments they make on appeal.

*Voluntarily*, Oxford English Dictionary (2d ed. 1989). Black's Law Dictionary similarly defines a "volunteer" as "[s]omeone who gratuitously and freely confers a benefit on another." *Volunteer*, Black's Law Dictionary (10th ed. 2014). Here, Butcher and Bergstrom gave their presentations at the request and for the benefit of local groups. They did so without compensation and on their own time. They thus fit the usual understanding of volunteers.[3]

Montana resists this straightforward point, claiming that Butcher and Bergstrom were not "volunteers" because "they were advocating for particular candidates, and using their own resources to do so." These arguments are unpersuasive. Taking the latter point first, that Butcher and Bergstrom used their own resources does not show (or even suggest) that they were not volunteers, much less that Butcher and Bergstrom should have intuited this result. Volunteers often act at some cost to themselves. A volunteer docent at a museum who drives downtown each week and pays for parking in the city garage is no less providing "volunteer services." Insofar as Montana means to suggest that Butcher and Bergstrom are different because they spent approximately $2,000 in total on their in-state travels, the argument likewise fails. Making such an outlay to perform unpaid services makes them, if anything, more dedicated volunteers.

Although Butcher and Bergstrom acknowledge they occasionally advocated for particular candidates, from the

---

[3] Indeed, that understanding is consistent with the Commissioner's own explanation that voluntary means "unpaid," as set forth in Rule 44.11.603(2)(a). *See* Mont. Admin. R. 44.11.603(2)(a) ("[T]he creation of electronic or written communications or digital photos or video, on a *voluntary (unpaid)* basis by an individual.") (emphasis added).

standpoint of a reasonable person, that conduct is also fully consistent with both the term "volunteer" and Montana's de minimis acts exemption. *See Grayned*, 408 U.S. at 108. Persons who volunteer in an election-related capacity quite often advocate for particular candidates. The other examples of de minimis acts, like displaying yard signs or bumper stickers, reflect advocacy for particular candidates, too. Charging Butcher and Bergstrom with political advocacy thus does not demonstrate they had fair notice that they were not engaging in volunteer services. And if Montana is suggesting that the problem is that Butcher and Bergstrom obtained some personal or reputational (though non-monetary) benefit from making their presentations, again, the same can be said of many other forms of volunteer work.

Next, Montana claims that Butcher and Bergstrom were not engaging in volunteer services because they acted "on their own" and not within the "organizational structure" of the Republican Party or local Republican groups. This argument is unavailing. Nothing in Montana law suggests that only those persons providing "volunteer services or efforts" within the "organizational structure" of a group are exempted from a political committee designation. There is no mention of any "organizational" requirement in Rule 44.11.603 or in Montana's other governing rules. *See Canyon Ferry*, 556 F.3d at 1030 (holding that Montana law was unconstitutionally vague as applied because "the Church had no way to know ex ante" that it would be treated as a political committee).

Montana's "organizational" requirement also conflicts with the common understanding of "volunteer." A volunteer often does not work for the organization for whom she provides volunteer services. A lawyer who volunteers to speak at a high school career fair is not within the

organizational structure of the school. But she is no less providing "volunteer services or efforts," Mont. Admin. R. 44.11.603(2)(g), just as Butcher and Bergstrom could have most naturally viewed themselves when they were invited to speak without compensation on topics of interest to local groups. To the extent Montana means that, to satisfy this "organizational" requirement, an organization must just be involved, here organizations were involved: they invited Butcher and Bergstrom to speak at events that the organizations sponsored.[4]

Finally, Montana argues that Butcher and Bergstrom could not have reasonably viewed themselves as volunteers because Rule 44.11.603(2)(g) was intended to codify a 2014

---

[4] Montana points out that the statutory definition of "contributions" excludes "services provided without compensation by individuals volunteering a portion or all of their time on behalf of a candidate or political committee," and that this exclusion carries over to the definition of "expenditures." Mont. Code Ann. §§ 13-1-101(9)(b)(i), (19)(b)(i). But Rule 44.11.603 is a separate part of the regulatory scheme from these exclusions. And even if the statutory exclusions were relevant here, they do not purport to provide a definition of who qualifies as a "volunteer," much less a definition applicable to Rule 44.11.603(2)(g), which uses the phrase "volunteer services or efforts." The regulatory scheme thus does not indicate that Rule 44.11.603(2)(g) is meant to "implement" §§ 13-1-101(19)(b)(i) or 13-1-101(9)(b)(i), as the dissent asserts. And even if we assume this is the correct interpretation of Montana law, the question for purposes of Butcher and Bergstrom's vagueness claim is whether the law provided "fair notice" of this interpretation, which it does not. *Fox*, 567 U.S. at 254.

Montana also errs in claiming that Butcher and Bergstrom "independently expended resources supporting and opposing specific candidates, meeting the definition of a political committee." This logic is circular. If Butcher and Bergstrom's expenses were de minimis under Montana law, then they never formed a political committee in the first place.

Commissioner of Political Practices advisory opinion. *See Electronic Campaigning*, Mont. Comm'r Pol. Prac. Advisory Op. 2 (Jan. 31, 2014); *see also* 2015 Mont. Admin. Reg. 1138, 1150 (Aug. 13, 2015) (confirming that the de minimis rule codified the Commissioner's previous advisory opinions). In the 2014 opinion, the Commissioner explained that "Montana law has a particular exception from the definition of campaign contribution for volunteer time as well as for certain unreimbursed expenses (gas for car) associated with volunteer time." *Electronic Campaigning*, Mont. Comm'r Pol. Prac. Advisory Op. (Jan. 31, 2014). The 2014 opinion further clarified that based on this exception, "[t]he time spent by legions of civic minded people going door to door in Montana to talk in favor of a candidate" is not reportable. *Id*.

In its brief on appeal, Montana relies on this 2014 advisory opinion to argue that "Butcher and Bergstrom could have met th[e] requirement" for "volunteer services" "if, for example, they volunteered with a local GOP organization to conduct door-to-door canvasing." The problem, Montana tells us, is that Rule 44.11.603(2) "is intended to avoid sweeping up individuals engaged in *casual political acts* into Montana's reporting requirements," and "Butcher and Bergstrom are *neither casual political participants* nor were they engaged in door-to-door canvasing." (Emphasis added.) We reject this argument.

There is nothing in Montana law or the common understanding of "volunteer services" that limits the term to door-to-door canvassers or people akin to them. And regardless, by the Commissioner's characterization of Butcher and Bergstrom's activities, it is not clear why the two were not analogous to door-to-door canvassers, as "civic minded people" speaking "in favor of" candidates.

*Electronic Campaigning*, Mont. Comm'r Pol. Prac. Advisory Op. 2 (Jan. 31, 2014).

The State's suggestion that Montana's reporting scheme intends to exclude "casual political acts" is of even greater concern from a due process perspective. That phrase also appears nowhere in any Montana statute or regulation. And if it did, it would create clear vagueness problems because what may count as a "casual political act" is entirely subjective. *See City of Chicago v. Morales*, 527 U.S. 41, 62–64 (1999) (concluding that an ordinance "does not provide sufficiently specific limits on the enforcement discretion of the police to meet constitutional standards" because its application was "inherently subjective"). It would also invite arbitrary enforcement, giving the Commissioner unguided discretion to determine when a speaker's core First Amendment activities had become sufficiently "non-casual," *e.g.*, too prominent, frequent, or outside the norm. Posting one sign in the yard might be "casual," but what about fifteen? Butcher and Bergstrom had no reasonable way to know that when they drove around Montana and bought meals at McDonald's and stayed at the La Quinta Inn, they were not being "casual" enough.

To this point, at oral argument we asked the State whether a married couple who drove around their town doing door-to-door canvassing and spent more than $250 in gas would have to register as a Montana political committee. And Montana's answer, remarkably, was yes. Nothing in Montana law could have possibly alerted anyone that this kind of activity would form a political committee and thereby require compliance with Montana's detailed registration and disclosure requirements, some of which apply within five days of the expenditure. Montana's 2014 advisory opinion expressly *exempted* the costs of door-to-

door canvassing. Now Montana says that in some circumstances they might in fact be covered. The lack of fair notice and risks of arbitrary enforcement are palpable. *See Fox*, 567 U.S. at 254.

For all these reasons, we hold that Butcher and Bergstrom lacked fair notice that their conduct would not be regarded as volunteer services or efforts under Rule 44.11.603(2)(g).

## D

We turn lastly to Montana's remaining argument: that even if Butcher and Bergstrom more probably incurred expenses associated with "volunteer services," they still had fair notice based on the rest of Rule 44.11.603 that their expenditures were not "de minimis acts."

Montana first points out that although Rule 44.11.603(2) lists examples of acts and expenditures that may be treated as de minimis (including those associated with volunteer services or efforts), that subsection is prefaced with: "Acts, contributions, or expenditures that *may*, *depending on the circumstances*, include . . . ." (Emphasis added). Montana thus argues that meeting any of the examples in subsection (2) is not a "safe haven." And Montana further maintains that subsection (2)'s mention of "circumstances" is a reference to subsection (1), which sets forth five factors that the Commissioner "may consider" in determining whether expenditures are de minimis. In Montana's view, "[a]pplication of the five factors to specific facts will indicate the probability of an act being considered *de minimis*, thus providing individuals a reasonable opportunity to know whether their actions" are exempt.

We reject Montana's argument as applied to Butcher and Bergstrom.    We agree that in assessing a vagueness challenge, we must consider Montana law as a whole.  *See, e.g.*, *Gospel Missions*, 419 F.3d at 1048; *Hum. Life of Washington, Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010).  We further agree that laws that confer some amount of flexibility in their application do not invariably trigger vagueness concerns.  *See, e.g.*, *Ward*, 491 U.S. at 794 ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.").

But in this case, consideration of Rule 44.11.603 in its entirety only exacerbates the due process problems with treating Butcher and Bergstrom as a political committee.  It is hardly apparent, as Montana claims, that "the circumstances" in Rule 44.11.603(2) is a reference to the five "factors" in Rule 44.11.603(1).  But even assuming a reasonable person would have fair notice of that claimed tie-in, evaluation of the Rule 44.11.603(1) factors in connection with the volunteer example in Rule 44.11.603(2)(g) shows that Montana cannot prevail.  Montana is correct that on its face, Rule 44.11.603(2) does not purport to confer safe havens.  The problem is that the rest of the Rule does not provide fair notice as to when persons like Butcher and Bergstrom who are presumptively *within* the subsection (2)(g) volunteer example may nonetheless be regulated as a political committee.  And it thereby creates the very risk of arbitrary enforcement that the Due Process Clause seeks to prevent.

We begin with the first three "factors" in Rule 44.11.603(1):  (a) whether the expenditure has an "ascertainable market value," (b) in the case of the provision of services, whether the act "results in either a detriment to

the provider of the services, such as an out-of-pocket expense or the preclusion of other activities," and (c) whether the expenditure "is a single, one-time event or occurrence or multiple events or occurrences." Mont. Admin. R. 44.11.603(1)(a)–(c). Montana argues that factors (a) and (b) were intended to address *Canyon Ferry*, and that factor (c) provides similarly objective criteria as the first two.

The issue that arises with the first three factors, however, is not how they operate standing alone and with each other, but how they interact with Rule 44.11.603(2)(g)'s volunteer services example. For even though Butcher and Bergstrom's conduct fell within the common understanding of volunteer services or efforts, it also fell within each of the first three factors in Rule 44.11.603(1). And the same would be true of nearly *any* volunteer work, including the actions of door-to-door canvassers—the "legions of civic minded people" who were the specifically intended beneficiaries of the "volunteer exception." *Electronic Campaigning*, Mont. Comm'r Pol. Prac. Advisory Op. 2 (Jan. 31, 2014). A review of the first three factors shows the problem.

Under the first factor, just as is true for Butcher and Bergstrom, door-to-door canvassers will often incur expenses that have an "ascertainable market value." Mont. Admin. R. 44.11.603(1)(a). We might expect typical expenses to include gas, parking, and meals—coincidentally, the very expenses listed in the volunteer example in Rule 44.11.603(2)(g). Under the second factor, volunteers (including door-to-door canvassers) often provide "services" that result in a detriment to themselves, either through "out-of-pocket expense or the preclusion of other activities." *Id.* 44.11.603(1)(b). And under the third factor, *id.* 44.11.603(1)(c), we can reasonably assume that

many volunteers will volunteer more than once (though notably here, the Commissioner found that Butcher and Bergstrom formed a political committee as soon as they made their first Legistats presentation).

The upshot is that nearly anyone who provides volunteer services with at least one other person will likely be covered by the first three factors in Rule 44.11.603(1), despite falling within an exemplar circumstance for acts that may be exempted. *See id.* 44.11.603(2)(g). Nothing in these warring provisions tells a person when his expenses associated with volunteering will be regarded as de minimis or not. *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 757–59 (9th Cir. 1985) (holding that "conflicting" and "facially contradictory" ordinances were impermissibly vague as applied).

Montana argues, however, that further clarity can be found in Rule 44.11.603(1)'s fourth and fifth factors. These last two factors have no apparent roots in *Canyon Ferry*, and Montana law does not specify how they are to be weighed against the first three. At oral argument, Montana agreed that even if none of the first three factors applies, two persons could still be regulated as a political committee based on the fourth and fifth factors alone. Regardless, the final two factors only confirm that the Rule is fatally vague as applied to Butcher and Bergstrom.

The fourth factor is "the extent to which a particular campaign practices violation deprives the public of disclosure." Mont. Admin. R. 44.11.603(1)(d). But this factor begs the question. The threshold issue here is whether a failure to report *is* a campaign practices violation in the first place. And whether it deprives the public of disclosure depends on what one believes the public ought to know— which is inherently a "policy matter[]" that turns on

"subjective" considerations. *Grayned*, 408 U.S. at 109; *see also Fox*, 567 U.S. at 253 (explaining that a regulation is vague when "it is unclear as to what fact must be proved").

Montana's discussion of this fourth factor in its briefing bears this out. Montana argues that "Butcher and Bergstrom's political activities *should be* subject to disclosure." (Emphasis added.) Whatever one's views on that point, it is a policy judgment. One could also think that a church placing election petitions in its foyer and a pastor urging members to vote for a ballot initiative are political activities that should be subject to disclosure, too. *See Canyon Ferry*, 556 F.3d at 1029–30. The same could be said of door-to-door canvassing. Particularly given the high First Amendment value of their speech and the risk that political discourse will be chilled, we do not think it satisfies due process to charge Butcher and Bergstrom with anticipating when the state would decide their activities warranted further disclosure.

Montana also argues under the fourth factor that the public has an interest in knowing how money is spent in political campaigns. Setting aside that if Butcher and Bergstrom had acted alone, they would not have formed a political committee regardless of how much they spent on their road trips, nothing in the statute (beyond the $250 threshold) provides guidance on when expenditures would be high enough to warrant disclosure. Indeed, by the logic of Montana's argument, any expenditures exceeding $250 could trigger the state's asserted interest, including ones that are expressly listed as examples of expenses that may be considered de minimis. *See* Mont. Admin. R. 44.11.603(2). It is thus telling, and of little comfort, that Montana tells us in its briefing that social media posts, lawn signs, and bumper stickers are only "*potentially* exclud[ed] from

reporting" requirements. (Emphasis added.) As applied to Butcher and Bergstrom—persons who fit well within an exemplar de minimis activity in Rule 44.11.603(2)— subsection (1)'s fourth factor is a blueprint for arbitrary enforcement and lack of fair notice.

The fifth factor does not change matters. That factor is a catch-all consisting of "other factors and circumstances similarly showing limited value or minimal harm." Mont. Admin. R. 44.11.603(1)(e). While Montana argues that the word "similarly" constrains the Commissioner to considerations similar to the first four factors, that constraint is minimal at best. Nothing in Montana law identifies what "factors and circumstances" might show limited value or minimal harm beyond the factors already set forth in the Rule. Nor does Montana law anywhere identify the magnitude of either the value or harm that Montana is or is not concerned with, much less the types of harms that would be considered relevant. *See Foti*, 146 F.3d at 639 ("With this range of factors to consider, there is the danger that a police officer might resort to enforcing the ordinance only against cars with signs whose messages the officer or the public dislikes."); *Berger v. City of Seattle*, 569 F.3d 1029, 1047– 48 (9th Cir. 2009) (concluding that a law was unconstitutionally vague because officials' ability to consider a "myriad of factors lends itself to discriminatory enforcement").

We thus hold that Rule 44.11.603 did not give Butcher and Bergstrom "a reasonable opportunity to know" that the expenses they incurred giving unpaid presentations would subject them to regulation as a Montana political committee. *Grayned*, 408 U.S. at 108. Rule 44.11.603 is therefore unconstitutional as to them.

\* \* \*

We reverse the judgment of the district court and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

W. FLETCHER, Circuit Judge, dissenting:

In 2019 and 2020 in anticipation of a primary election, Ed Butcher, a former Montana State Senator, and Lonny Bergstrom traveled to various locations in Montana giving political presentations to Republican organizations. They used a computer program that tracked how often Republican state legislators voted differently from the Republican caucus on partisan bills. They encouraged members of the audience to vote for or against Republican candidates for state legislative seats based on their past voting patterns. It is uncontested that Butcher and Bergstrom incurred over $1,000 in travel expenses. One of their presentations prompted a citizen complaint to Montana's Commissioner of Political Practices, alleging violation of Montana's election disclosure requirements.

Under Montana law, a combination of two or more individuals that spends more than $250 to support or oppose political candidates must register as a political committee and must report its expenditures. A regulation exempting de minimis expenditures from reporting requirements gives examples of expenditures that "may, depending on the circumstances, be considered de minimis." Mont. Admin. R. 44.11.603(2). One example is "expenses associated with volunteer services or efforts, including the cost of gas, parking, and meals." *Id.* at 44.11.603(2)(g).

Butcher and Bergstrom filed suit in district court challenging the statute and the implementing regulation. The district court entered summary judgment against them. The panel majority reverses, holding that Montana's disclosure requirements are unconstitutionally vague as applied to Butcher and Bergstrom.

I respectfully dissent.

## I.  Background

### A. Montana's Disclosure Law

Montana's election law requires candidates and political committees to file periodic reports of expenditures with the Commissioner of Political Practices.  Mont. Code Ann. § 13-37-225.  The statute defines a political committee as "a combination of two or more individuals or a person other than an individual who receives a contribution or makes an expenditure" for one of three purposes:  (1) "to support or oppose a candidate or a committee organized to support or oppose a candidate or a petition for nomination"; (2) "to support or oppose a ballot issue or a committee organized to support or oppose a ballot issue"; or (3) "to prepare or disseminate an election communication, an electioneering communication, or an independent expenditure."  *Id.* § 13-1-101(32)(a).  Political committees must file certifications with the Commissioner within five days of making an expenditure.  *Id.* § 13-37-201(2)(b).  Montana excludes from its definition of political committee any combination of individuals that makes an independent expenditure of $250 or less.  *Id.* § 13-1-101(32)(d).

Montana defines an "expenditure" as "a purchase, payment, distribution, loan, advance, promise, pledge, or gift of money or anything of value" that is "made by a candidate

or political committee to support or oppose a candidate or a ballot issue." *Id.* § 13-1-101(19)(a).    However, an expenditure falls into the de minimis category if it is "so small that it does not trigger registration, reporting, disclaimer, or disclosure obligations . . . or warrant enforcement as a campaign practices violation." *Id.* § 13-1-101(11).

The Commissioner is authorized to adopt rules that "define what constitutes de minimis acts, contributions, or expenditures."    Mont. Code Ann. § 13-37-114.    An Administrative Rule promulgated under the statute provides:

> (1) . . . The commissioner may consider the following factors in determining whether specific acts, contributions, or expenditures are de minimis and therefore do not trigger registration, reporting, attribution, or disclosure requirements, or warrant enforcement as a campaign practices violation:
>
>> (a) whether the act, contribution, or expenditure has an ascertainable fair market value, and if so the amount of that value;
>>
>> (b) in the case of an act that results in the provision of services, whether the act results in either a detriment to the provider of the services, such as an out-of-pocket expense or the preclusion of other activities;

> (c) whether the act, contribution, or expenditure at issue is a single, one-time event or occurrence or multiple events or occurrences;
>
> (d) the extent to which a particular campaign practices violation deprives the public of disclosure;
>
> (e) other factors and circumstances similarly showing limited value or minimal harm.

Mont. Admin. R. 44.11.603(1).

The Rule provides a non-exclusive list of contributions that may be de minimis:

> (2) Acts, contributions, or *expenditures that may, depending on the circumstances, be considered de minimis include*:
>
> (a) the creation of electronic or written communications or digital photos or video, on a voluntary (unpaid) basis by an individual, including the creation and outgoing content development and delivery of social media on the internet or by telephone;
>
> (b) the provision by an individual or political committee of personal property, food, or services with a cumulative fair market value of less than $50 in the aggregate for any single election;

(c) the location value of the display of lawn or yard signs on real property, but only if the property owner does not normally and does not in fact charge a fee for display of signs;

(d) any value attributable to the display of campaign bumper stickers or signs on a vehicle, but only if the vehicle owner does not normally and does not in fact charge a fee for display of bumper stickers or signs;

(e) typographical errors or incomplete or erroneous information on a campaign finance report that is determined not to be misleading or that does not substantially affect disclosure;

(f) any failure to comply with the attribution requirements of [Mont. Code Ann. § 13-35-225] that is determined to nevertheless provide sufficient disclosure regarding who made or financed the communication;

(g) *expenses associated with volunteer services or efforts, including the cost of gas, parking, and meals.*

*Id.* at 44.11.603(2) (emphasis added).

Based on Mont. Admin. R. 44.11.603(2)(g), italicized above, Butcher and Bergstrom argue that the Montana law is unconstitutionally vague.

### B. Factual and Procedural Background

During 2019 and 2020, Butcher and Bergstrom traveled to various locations in Montana to give PowerPoint presentations to Republican groups using Legistats, a computer program maintained by Butcher. Legistats tracks how often Republican members of Montana's state legislature vote differently from the majority of the Republican caucus on partisan bills. The fewer times a Republican legislator votes differently from the Republican majority, the higher the ranking that legislator will receive on Legistats's loyalty index. Legistats's rankings are accessible online at http://legislatorloyalty.com.

In 2019 and 2020, Butcher and Bergstrom gave numerous presentations to Republican groups at different locations in Montana. They encouraged the audience to vote for or against Republican candidates for the state legislature during their presentations. Their presentation in Glendive, Montana, prompted a citizen complaint alleging that they violated Montana's election disclosure laws. The Commissioner initiated an investigation into Butcher and Bergstrom's presentations. Evidence concerning five presentations was presented to the Commissioner. Transportation costs (not including parking, meals, and lodging) for four of those presentations—at Stevensville, Bozeman, Glendive, and Kalispell—totaled $1,198.30. The Commissioner found that Butcher and Bergstrom had formed a political committee subject to registration and disclosure requirements.

After the citizen complaint was filed, but before the Commissioner reached a decision, Butcher and Bergstrom sued the Montana Attorney General and the Commissioner in federal district court under 42 U.S.C. § 1983. Their complaint alleged that Montana's election disclosure laws

violated the First and Fourteenth Amendments based on speaker-based discrimination, vagueness, and infringement on fundamental rights. In answers to interrogatories, Butcher and Bergstrom "recall[ed]" that they had given eight presentations. They answered that their transportation costs (again, not including parking, meals, and lodging) for seven of those presentations totaled $1,887.00. In their "Statement of Facts" in the district court, Butcher and Bergstrom wrote that during their presentation in Kalispell they had stated they had given their presentation "14 or 15 times."

The district court granted summary judgment against Butcher and Bergstrom. It held, *inter alia*, that Montana's definition of de minimis acts is not unconstitutionally vague. Butcher and Bergstrom's only argument on appeal is that example (g) in Montana's Administrative Rule—"expenses associated with volunteer services or efforts"—is unconstitutionally vague. Mont. Admin. R. 44.11.603(2)(g).

## II. Discussion

"A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *Hum. Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) (quoting *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 555 (9th Cir. 2004)). "Nevertheless, perfect clarity is not required even when a law regulates protected speech," because "we can never expect mathematical certainty from our language." *Id.* (first quoting *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001); and then quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)).

## A. *Canyon Ferry*

We considered an earlier version of Montana's election disclosure regime against a vagueness challenge in *Canyon Ferry Road Baptist Church of East Helena, Inc. v. Unsworth*, 556 F.3d 1021 (9th Cir. 2009). At that time, Montana did not exempt de minimis acts or expenditures less than $250 from its disclosure requirements. *Id.* at 1026–27. In *Canyon Ferry*, a church allowed a member to use the church's photocopy machine to make fewer than 50 copies of the petition for a state ballot initiative. *Id.* at 1024. The church placed the ballot petitions in its foyer, and at a regularly scheduled Sunday evening service the pastor encouraged the congregation to sign the petitions. *Id.* at 1024–25.

The Commissioner of Political Practices found that the church and its pastor were a political committee and that the committee had failed to meet its reporting obligations. *Id.* at 1025. The Commissioner found that the pastor was not a volunteer. *Id.* The church and the pastor brought suit under § 1983, arguing that Montana's election disclosure law is unconstitutionally vague both on its face and as applied. *Id.* They did not challenge, and we did not address, the Commissioner's conclusion that the pastor was not a volunteer. Rather, they challenged the Commissioner's conclusion that the church and pastor had made expenditures within the meaning of the statute. *Id.* at 1028.

We upheld the statute's definition of expenditures against a facial vagueness challenge: "We have no doubt that the Montana regulation poses no vagueness problem in the 'vast majority of its intended applications.'" *Id.* (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). We held that Montana's disclosure regulation was unconstitutionally vague as applied to the placement of the ballot petitions in

the church's foyer, and to the pastor's exhortation to sign the petition during a sermon. *Id.* at 1029–30. But we held that it was not unconstitutionally vague as applied to the member's use of the church's photocopy machine.[1] *Id.* at 1030.

After *Canyon Ferry*, Montana amended its definition of an "expenditure" that triggers the creation of a political committee. As relevant here, Montana added a $250 threshold and an exception for de minimis acts. *See* Mont. Code Ann. § 13-1-101(32)(d) ("A political committee is not formed when a combination of two or more individuals or a person other than an individual makes an election communication, an electioneering communication, or an independent expenditure of $250 or less."); *id.* § 13-1-101(11) ("'De minimis act' means an action, contribution, or expenditure that is so small that it does not trigger registration, reporting, disclaimer, or disclosure obligations . . . or warrant enforcement as a campaign practices violation . . . ."). Pursuant to Mont. Code Ann. § 13-37-114, the Commissioner promulgated the interpretive Administrative Rule quoted above.

## B. Mont. Admin. R. 44.11.603(2)(g)

Butcher and Bergstrom's sole argument on appeal is that the exemption contained in § 44.11.603(2)(g) is unconstitutionally vague as applied to them. They formulate the issue on appeal as follows:

---

[1] We went on to hold that Montana violated the church's First Amendment rights to free speech by requiring it to report its member's use of the church photocopier. *Canyon Ferry*, 556 F.3d at 1034.

When a campaign-finance law exempts from disclosure "expenses associated with volunteer services or efforts," but application of that exemption "depend[s] on the circumstances," and those "circumstances" are not defined with any degree of clarity, is the law unconstitutionally vague?

Butcher and Bergstrom argue that they had no way of knowing whether expenses for "the cost of gas, parking[,] and meals" were expenses "associated with volunteer services," and had no way of knowing whether they were covered by Montana's registration and reporting requirements. They do not argue that the definition of "the cost of gas, parking, and meals" is unconstitutionally vague. Rather, they argue that they are not a "political committee" under Montana law, but are, instead, "volunteers." They argue that if the term "volunteer services" does not include their activities, it is unconstitutionally vague as to them.

In my view, this is a fairly straightforward case. Both the Commissioner and the district court got it right.

As relevant here, a "[p]olitical committee" is defined under Montana law as "a combination of two or more individuals . . . who . . . makes an expenditure . . . to support or oppose a candidate[.]" Mont. Code Ann. § 13-1-101(32)(a)(i). "A political committee is not formed when a combination of two or more individuals . . . makes . . . an independent expenditure of $250 or less." *Id.* § 13-1-101(32)(d). Butcher and Bergstrom are two individuals. They combined to support or oppose candidates in Republican primary elections. They made expenditures of more than $250 in this endeavor. Butcher and Bergstrom were therefore a "political committee" under Montana law.

Butcher and Bergstrom contend that they were not a political committee, but were, rather, merely "volunteers." They are correct that "volunteers," even if acting together, do not become a "political committee" by virtue of making expenditures of more than $250. The Montana statute provides that expenditures by volunteers do not transform volunteers into a political committee: "The term [expenditure] does not mean . . . services provided without compensation by *individuals volunteering a portion or all of their time on behalf of a candidate or political committee*." *Id.* § 13-1-101(19)(b)(i) (emphasis added) (incorporating by reference § 13-1-101(9)(b)(i)). Administrative Rule 44.11.603(2)(g), specifying that volunteers' expenditures for gas, parking, and meals are not expenditures by a "political committee," implements the Montana statute.

Butcher and Bergstrom did not act as "volunteers" within the meaning of § 13-1-101(19)(b)(i). By their own admission, they did not incur their travel costs as volunteers "on behalf of a . . . political committee." *Id.* Nor did they do so as volunteers on behalf of a particular candidate. Rather, they encouraged Republican groups in Montana to vote for or against various Republican candidates based on their past voting patterns in the Montana legislature.

Butcher and Bergstrom are not political naifs. They are sophisticated political actors. They acted in a concerted and sustained manner to bring accurate and relevant political information to interested political groups. In short, they engaged in valuable and protected First Amendment activity. But they did not do so as "volunteers" within the meaning of Montana election law. Rather, they did so as a "political committee."

I respectfully dissent.